FILED
United States Court of Appeals
Tenth Circuit

April 15, 2022

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

IRA LEE WILKINS,

    Defendant - Appellant.

No. 19-5114

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:19-CR-00116-JED-1)**

_____

Shira Kieval, Assistant Federal Public Defender, and Virginia L. Grady, Federal Public Defender, Denver, Colorado, for the Defendant-Appellant.

Clinton J. Johnson, Acting United States Attorney, and Leena Alam, Assistant United States Attorney, Tulsa, Oklahoma, for the Plaintiff-Appellee.

_____

Before **BACHARACH**, **BRISCOE**, and **MURPHY**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

This case arises out of Mr. Ira Lee Wilkins's sentence for unlawfully possessing a firearm. *See* 18 U.S.C. § 922(g)(1). In deciding the sentence, the district court considered the effect of Mr. Wilkins's prior conviction in

Texas for aggravated robbery. The district court characterized this offense as a "crime of violence" under the sentencing guidelines, which increased the base-offense level. U.S.S.G. §§ 2K2.1(a)(4)(A) & (6). Mr. Wilkins appeals, arguing for the first time that the district court shouldn't have considered aggravated robbery as a crime of violence.[1] We affirm.

## I.     To determine whether aggravated robbery in Texas constitutes a crime of violence, we must determine the applicable approach.

To determine whether a prior offense constitutes a crime of violence, we apply either the categorical approach or the modified categorical approach. *United States v. Kendall*, 876 F.3d 1264, 1267–68 (10th Cir. 2017).

### A.     Categorical Approach

Under the categorical approach, we compare the underlying state statute to the guidelines' definition of a "crime of violence." *Id.* at 1267. If the statute sweeps beyond the guidelines' definition of a "crime of

---

[1]     After we affirmed the sentence, Mr. Wilkins raised a new issue in the United States Supreme Court, urging reconsideration based on *Borden v. United States*, 141 S. Ct. 1817 (2021). There the Supreme Court had concluded that a criminal offense with a mens rea of recklessness could not constitute a violent felony under the Armed Career Criminal Act. *Id.* at 1834. The Supreme Court granted the request, remanding for consideration of *Borden*. We have applied *Borden* to the sentencing guidelines, holding that a crime of violence under the sentencing guidelines requires a mens rea greater than recklessness. *United States v. Ash*, 7 F.4th 962, 963 (10th Cir. 2021).

violence," we wouldn't consider the offense a crime of violence. *Id. at* 1267–68.

We start with how Texas defines aggravated robbery. Under Texas law, a person commits aggravated robbery if "he commits robbery as defined in Section 29.02, and he

(1)    causes serious bodily injury to another;

(2)    uses or exhibits a deadly weapon; or

(3)    causes bodily injury to another person or threatens or places another person in fear of imminent bodily injury or death, if the other person is:

(A)    65 years of age or older; or

(B)    a disabled person."

Tex. Penal Code § 29.03(a).

This definition turns on the meaning of "robbery." A person commits robbery under § 29.02 "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he:

(1)    intentionally, knowingly, or recklessly causes bodily injury to another; or

(2)    intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."

Tex. Penal Code § 29.02(a).

We compare this definition of aggravated robbery to the guidelines' definition of a "crime of violence." The applicable guideline provision, § 4B1.2(a)(1), defines a "crime of violence" as a state felony that "has as

3

an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).[2] So we must decide whether Texas's offense of aggravated robbery necessarily contains an element of using, attempting to use, or threatening to use physical force against "the person of another." *Id.*

### B.    Modified Categorical Approach

The parties agree that Texas's statutes for robbery and aggravated robbery cover some conduct that wouldn't fit the applicable definition of a "crime of violence." But the government argues that

- the Texas statutes create separate offenses and

- Mr. Wilkins's conviction involves only the offense that constitutes a "crime of violence."

So we must decide whether the Texas statutes refer to different crimes or just different ways of committing a single crime. We call this inquiry "divisibility." *United States v. Titties*, 852 F.3d 1257, 1266 (10th Cir. 2017).

---

[2]    The guidelines contain a separate definition that treats "robbery" as one of the crimes constituting a "crime of violence." U.S.S.G. § 4B1.2(a)(2). Under this part of the definition, a Texas robbery counts only if it fits the generic definition of a robbery. *See United States v. O'Connor*, 874 F.3d 1147, 1154 (10th Cir. 2017) (concluding that robbery under the Hobbs Act, which requires the use or threat of force against property, does not qualify as generic robbery and extends beyond § 4B1.2(a)(2)). The government does not characterize Mr. Wilkins's offense as a generic robbery, so this definition does not apply.

A statute is "divisible," creating multiple crimes, when the statute "sets out one or more *elements* of the offense in the alternative." *Descamps v. United States*, 570 U.S. 254, 257 (2013) (emphasis added). But disjunctively listed statutory components do not automatically qualify as elements. *United States v. Titties*, 852 F.3d 1257, 1267 (10th Cir. 2017). When the statute merely lists "various factual ways of committing some component of the offense," the statutory components are considered *means* rather than *elements*. *Id.* (internal quotation marks & citation omitted). A statute is divisible only when it lists "multiple, alternative elements, and so effectively creates several different . . . crimes." *Id.* (internal quotation marks & citation omitted).

If the statute is divisible, creating multiple crimes, the district court applies the modified categorical approach to determine which crime was committed. *Id.* To make that determination, the court consults a limited class of record documents. *Id.* at 1266. Once the court determines which crime the defendant committed, the court compares the elements of that crime to the guidelines' definition of a "crime of violence." *Id.*

II.    **It would not have been an obvious error for the district court to classify the Texas robbery statute as divisible, creating multiple crimes.**

At issue is the divisibility of the Texas robbery statute, § 29.02(a).[3] *See* p. 3, above. Subsection "1" requires only recklessness; Subsection "2" requires either intentional or knowing conduct. So our threshold task is to decide whether these statutory components refer to elements (reflecting two separate crimes) or means (different ways of committing the same offense). Under the plain-error standard, Mr. Wilkins doesn't show an obvious error in considering the statutory components as elements.

A.    **We apply the plain-error standard, preventing reversal unless the alleged error is obvious.**

If Mr. Wilkins had preserved the issue, the government would need to establish that

- the Texas robbery statute contains two sets of elements and

- Mr. Wilkins's conviction is a "crime of violence" under the guidelines because the elements require the use, attempt to use, or threat to use physical force against another person.

---

[3]    Mr. Wilkins also argues that the aggravator at issue—§ 29.03(a)(2) ("using or exhibiting a deadly weapon")—does not qualify as a crime of violence because recklessness would suffice. But aggravated robbery contains two elements: (1) a robbery under § 29.02(a) and (2) an aggravator under § 29.03(a). To show that aggravated robbery is not a crime of violence, Mr. Wilkins needed to establish that both the robbery and the aggravator require a mens rea of only recklessness. Because we ultimately conclude that Mr. Wilkins's robbery offense requires a mens rea greater than recklessness, we need not address his argument about the aggravator.

6

*See United States v. Degeare*, 884 F.3d 1241, 1245 (10th Cir. 2018).

But in district court, Mr. Wilkins did not challenge classification of aggravated robbery as a crime of violence. So we apply the plain-error standard. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc). Under this standard, Mr. Wilkins must show an error that is plain, affects substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Ordinarily, a statute is indivisible unless we can tell with certainty that the alternative statutory components constitute elements (rather than means). *United States v. Cantu*, 964 F.3d 924, 929 (10th Cir. 2020). This court has not defined the level of certainty required for divisibility; at a minimum, we must be "*at least* more certain than not that a statute's alternatives constitute elements." *United States v. Degeare*, 884 F.3d 1241, 1248 n.1 (10th Cir. 2018) (emphasis in original). But given the plain-error standard, our ultimate question is whether classification of the statutory components as elements would have constituted an obvious error.[4] *See* pp. 3–4, 6–7, above.

---

[4]     Mr. Wilkins argues that we need not "'definitively' conclude that Texas aggravated robbery is indivisible." Appellant's Supp. Reply Br. at 2. We agree. Under the plain-error standard, we don't require a defendant to conclusively prove indivisibility. *See, e.g.*, *United States v. Cantu*, 964 F.3d 924, 935 (10th Cir. 2020).

**B.    The district court could have reasonably considered the statutory components of Texas robbery as elements.**

To determine whether the statutory components constitute elements, we start by considering the pertinent state's caselaw, the pattern jury instructions, and the statute itself. *See United States v. Cantu*, 964 F.3d 924, 928 (10th Cir. 2020) (the state's caselaw and the statutory text); *Johnson v. Barr*, 967 F.3d 1103, 1109 (10th Cir. 2020) (the pattern jury instructions). If those sources show with certainty whether the separate statutory components constitute elements or means, the inquiry ends. *Cantu*, 964 F.3d at 928. If the characterization remains uncertain, the court can "peek" at the record to determine whether the statutory components constitute elements or means. *Id.* at 928–29.

**1.    Pattern Jury Instructions and State Caselaw**

Texas's pattern jury instructions suggest that the statutory components are elements. But Mr. Wilkins points to two Texas state-court opinions as proof that the statutory components are means:

a.    *Cooper v. State*, 430 S.W.3d 426 (Tex. Crim. App. 2014)

b.    *Burton v. State*, 510 S.W.3d 232 (Tex. Ct. App. 2017)

These opinions provide little help in characterizing the statutory components as elements or means.

8

### a.     Texas's Criminal Pattern Jury Charges

The state's pattern jury instructions provide guidance on the content

of Texas law. *Johnson v. Barr*, 967 F.3d 1103, 1109 (10th Cir. 2020); *see*

*also Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45 (Tex. 2007) ("[O]ur

trial courts routinely rely on the Pattern Jury Charges in submitting cases

to juries, and we rarely disapprove of these charges."). That guidance is

particularly helpful here because

- Mr. Wilkins pleaded guilty and

- the record contained no case–specific jury instructions.

*See United States v. Titties*, 852 F.3d 1257, 1270 n.15 (10th Cir. 2017)

(considering the state's pattern jury instructions in similar circumstances).

In Texas, the pattern jury instructions differ for the two subsections

of the robbery statute. *Compare* Tex. Crim. Pattern Jury Charges § 87.2

(Robbery by Threats), *with* Tex. Crim. Pattern Jury Charges § 87.1

(Robbery Bodily Injury). Those differences "suggest[] that robbery by

threat and robbery by bodily injury are separate crimes within one statute."

*Martin v. Kline*, No. 19-15605, 2021 WL 6102175, at *1 (9th Cir. Dec. 22,

2021) (unpublished); *see also United States v. Leaverton*, 895 F.3d 1251,

1255 (10th Cir. 2018) (basing divisibility in part on the uniform jury

instructions' indication that the statutory components require proof of

different elements). So the pattern jury instructions support

characterization of the statutory components as elements.

**b.**     *Cooper v. State*

Despite the pattern jury instructions, Mr. Wilkins points to *Cooper v. State*, 430 S.W.3d 426 (Tex. Crim. App. 2014). But there a majority of the court didn't agree on whether the statutory components constituted elements or means.

In *Cooper*, Texas's highest criminal court found a double jeopardy violation when the defendant had been convicted of both "aggravated robbery by causing bodily injury" and "aggravated robbery by threat." *Id.* at 427. Five out of eight participating judges joined the majority.

Two judges in the majority wrote concurrences, each joined by another judge in the majority. Both concurrences agreed that "the 'threat' and 'bodily' injury elements of robbery [were] simply alternative methods of committing a robbery." *Id.* at 434 (Keller, P.J., concurring); *id.* at 439 (Cochran, J., concurring). Mr. Wilkins thus argues that the concurrences definitively treat the alternative phrases in the Texas robbery statute as means rather than elements.

But the cited statements come from the concurrences, not the majority opinion. The concurrences included only a plurality (four of the eight judges). And under Texas law, the plurality does not constitute binding authority. *See Univ. of Tex. Med. Branch v. York*, 871 S.W.2d 175, 176–77 (Tex. 1994) (concluding that a prior plurality opinion didn't

10

constitute authority for future cases when "a majority of the sitting court" had not agreed on the principles of law).

Mr. Wilkins argues that the cited statements garnered a court majority because

- the four concurring judges had joined the majority and

- a fifth judge in the majority had not expressed disagreement.

But we cannot read the fifth judge's silence as implicitly adopting the reasoning of the concurrences. *See Sands v. State*, 64 S.W.3d 488, 494–95 (Tex. Ct. App. 2001) (concluding that a prior concurrence didn't reflect a majority of the court when three justices would reach the same outcome but didn't join the majority's reasoning). After all, the fifth judge in the majority could have incorporated this position if he had agreed with the concurrences.

Mr. Wilkins argues that even if the concurrences do not bind us, they show that the double-jeopardy question turned on classification as elements or means. In support, Mr. Wilkins observes that

- the dissenting judges in *Cooper* found no violation of double jeopardy, reasoning that robbery-by-injury and robbery-by-threat are different offenses and

- *Cooper* overruled an opinion addressing classification of robbery-by-threat and robbery-by-assault as means or elements.

Granted, we have consulted double-jeopardy cases when deciding divisibility. *See, e.g.*, *United States v. Cantu*, 964 F.3d 924, 930 (10th Cir.

11

2020); *United States v. McKibbon*, 878 F.3d 967, 975 (10th Cir. 2017). But when we've considered double-jeopardy cases, their reasoning has clarified the characterization as elements or means. For example, we relied on a state-court opinion to find indivisibility because the court had found a legislative intent "to create a single, unitary offense" in enacting the pertinent statute. *United States v. McKibbon*, 878 F.3d 967, 975 (10th Cir. 2017) (internal quotation marks & citation omitted). Similarly, we interpreted an opinion to support indivisibility when the state court had recognized that two counts addressed a single offense and shared the same elements. *United States v. Cantu*, 964 F.3d 924, 930 (10th Cir. 2020).

In contrast, the majority opinion in *Cooper* noted in a single sentence, without any explanation, that the court had found a double-jeopardy violation, saying only that the court had "review[ed] the opinion of the court of appeals, the record, and the briefs of the parties." *Cooper v. State*, 430 S.W.3d 426, 427 (Tex. Crim. App. 2014) (majority opinion). Without an explanation for this finding, we have little to help us classify the statutory components as elements or means. So the district court wouldn't have committed an obvious error under *Cooper* by declining to treat the statutory components as means.

12

c.    *Burton v. State*

Mr. Wilkins also relies on *Burton v. State*, 510 S.W.3d 232 (Tex. Ct. App. 2017). But *Burton* didn't expressly address classification as elements or means.

In *Burton*, an intermediate appellate court found no violation of the defendant's right to a unanimous verdict when the jury could infer aggravated robbery from either a bodily injury or threat. *Id.* at 237. The *Burton* court ultimately held that "causing bodily injury or threatening the victim [were] different *methods* of committing the same [aggravated robbery] offense." *Id.* (emphasis added). But what did the court mean by *methods*? The court did not say, leaving it "unclear whether the [*Burton*] court was referring to the elements of a crime, the means of satisfying a single element, or the crimes set forth by a statute under a [divisibility] analysis." *United States v. Lerma*, 877 F.3d 628, 634 n.4 (5th Cir. 2017).

Despite this lack of clarity in *Burton*, Mr. Wilkins interprets the court's use of the term *methods* as synonymous with *means*. This interpretation is possible, but not definitive, for courts sometimes use the term *methods* when referring to alternative statutory components that could consist of either elements or means. *See, e.g.*, *United States v. Harris*, 950 F.3d 1015, 1017 (8th Cir. 2020) ("If the statute lists alternative *methods* of committing the offense, we must determine whether the statute lists alternative *elements* that define separate crimes and must be found by a

13

jury or whether the statute merely 'specifies various *means* of fulfilling the crime's elements.'" (quoting *United States v. Doyal*, 894 F.3d 974, 975 (8th Cir. 2018) (emphasis added))).

Mr. Wilkins also characterizes the statutory components of Texas robbery as means because *Burton* did not require jury unanimity on whether the defendant had committed robbery by threat or by injury. *Burton v. State*, 510 S.W.3d 232, 236 (Tex. App. 2017); *see also United States v. Degeare*, 884 F.3d 1241, 1249–50 (10th Cir. 2018) (basing indivisibility on a jury's ability to find guilt despite internal disagreement among the jury). But if Mr. Wilkins were right, we would have an internal conflict among Texas's intermediate appellate courts. In an earlier opinion, *Woodard v. State*, for example, the Texas Court of Appeals had held that the robbery statute "provide[d] two separate, underlying robbery offenses—robbery causing bodily injury and robbery by threat." 294 S.W.3d 605, 608 (Tex. Ct. App. 2009).

In *Burton*, the court didn't address—much less overrule—*Woodard*'s characterization of the two statutory components as separate offenses.[5] So

---

[5] The *Burton* court did refer to *Woodard* in a footnote. But that reference addressed only *Woodard*'s consideration of the aggravating factors of aggravated robbery, stating that they involved "simply descriptions or means by which the underlying offense of robbery causing bodily injury can be committed." *Burton v. State*, 510 S.W.3d 232, 237 n.4 (Tex. Ct. App. 2017) (citing *Woodard v. State*, 294 S.W.3d 605, 609 (Tex. Ct. App. 2009)).

the district court wouldn't have committed an obvious error by declining to characterize the statutory components as means based on *Burton*.

\* \* \*

The cited state-court opinions thus do not resolve the issue of divisibility.

### 2. Statutory Text

Besides the pattern jury instructions and case law, we also consider the statute itself. The alternative statutory components, listed in separate numbered paragraphs,[6] involve not only different conduct but also different elements. "The inclusion of different sets of mens rea elements is strong evidence that the Texas robbery statute is divisible," involving a difference in elements rather than means. *Martin v. Kline*, No. 19-15605, 2021 WL 6102175, at \*1 (9th Cir. Dec. 22, 2021) (unpublished); *see also United States v. Garrett*, 24 F.4th 485, 489 (5th Cir. 2022) (reasoning that the statutory components in Texas's robbery statute constitute elements in part

---

[6]    Granted, we have held that this factor alone would not show with certainty that the statutory components constitute elements. *United States v. Degeare*, 884 F.3d 1241, 1253 (10th Cir. 2018). But we can consider this factor as one of the statutory characteristics to determine whether the statutory components constitute elements or means.

Mr. Wilkins points out that the Supreme Court hasn't listed the existence of separate subsections as a factor suggesting divisibility. But we often consider factors beyond those that the Supreme Court has considered. *See, e.g.*, *United States v. Hamilton*, 889 F.3d 688, 696 (10th Cir. 2018).

15

because of the different mental states for robbery-by-injury and robbery-by-threat).

We can also consider analogous state statutes in determining divisibility. *See, e.g.*, *Johnson v. Barr*, 967 F.3d 1103, 1109 (10th Cir. 2020). For example, Texas's assault statute contains three subdivisions in separate paragraphs, divided by semicolons. Each paragraph describes different behavior and mens rea. *See* Tex. Penal Code § 22.01.[7] These subdivisions, according to the Texas Court of Criminal Appeals, describe "three distinct criminal offenses." *Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008). The court thus explained that "aggravated assault by causing bodily injury" and "aggravated assault by threat" were two separate crimes: "The first is a result-oriented offense and the second is a conduct-oriented offense." *Id.*; *see also United States v. Garrett*, 24 F.4th

---

[7]    In Texas, a person commits assault "if the person:

    (1)    intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

    (2)    intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

    (3)    intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."

Tex. Penal Code Ann. § 22.01.

485, 489 (5th Cir. 2022) ("The Texas simple robbery statute creates two distinct crimes, robbery-by-injury and robbery-by-threat.").

Mr. Wilkins points out that the two statutory components trigger the same punishments. The presence of the same punishment suggests characterization as means, but that suggestion isn't dispositive. *United States v. Bouziden*, 725 F. App'x 653, 657 (10th Cir. 2018) (unpublished).[8]

### 3.    Record Documents

When uncertainty remains after considering the pattern jury instructions, state caselaw, and the state statute itself, we can "peek" at the record documents to determine whether the items listed in the statute are elements or means. *Mathis v. United States*, 136 S. Ct. 2243, 2256–57 (2016) (quoting *Rendon v. Holder*, 782 F.3d 466, 473–474 (9th Cir. 2015) (Kozinsky, J., dissenting)).[9]

Mr. Wilkins argues that the record supports characterization as means because the state court did not call the charge against Mr. Wilkins "anything but 'aggravated robbery'" or cite a specific subsection of the robbery statute. Appellant's Supp. Reply Br. at 4 n.1. For this argument, Mr. Wilkins cites multiple orders deferring adjudication.

---

[8]    *Bouziden* is persuasive but not precedential. *See* 10th Cir. R. 32.1(A).

[9]    Mr. Wilkins attaches the relevant documents to his supplemental brief and requests judicial notice of these documents. *See* Fed. R. Evid. 201(b), (c)(2), (d). We grant his request.

17

But in "peeking" at the record to determine divisibility, we consider only "conclusive records made or used in adjudicating guilt," such as the charging document, jury instructions, and plea agreement. *United States v. Abeyta*, 877 F.3d 935, 942 (10th Cir. 2017) (quoting *Shepard v. United States*, 544 U.S. 13, 21 (2005)). Orders deferring adjudication do not help us on divisibility. *See id.* (declining to "peek" at the docket sheet because it falls short of being a "'conclusive record[] made or used in adjudicating guilt'").

In the indictment, only the first paragraph sets out a charge of aggravated robbery. This paragraph includes

- one subsection of robbery ("intentionally or knowingly threaten[ing] or plac[ing] another in fear of imminent bodily injury or death"), § 29.02(a)(2), and

- one aggravator ("us[ing] and possess[ing] a deadly weapon"), § 29.03(a)(2).

In four additional paragraphs, the indictment states how Mr. Wilkins had committed robbery by "intentionally, knowingly and recklessly" causing bodily injury to the victim under § 29.02(a)(1), but not "serious" bodily injury—an aggravator under § 29.03(a)(1). True Bill of Indictment, No. 219-81050-99 (Collin Cnty., Texas Dist. Ct. Nov. 10, 1999). And none of these paragraphs refer to any additional aggravators under § 29.03(a). *See*

18

*id.*[10] Because the indictment includes only one charge of aggravated robbery and that charge refers only to one statutory component of Texas robbery under § 29.02(a), we can infer that the statute contains a list of elements rather than means. *Mathis v. United States*, 136 S. Ct. 2243, 2257 (2016).

Mr. Wilkins's guilty plea also supports characterization as elements. *See United States v. Adkins*, 883 F.3d 1207, 1215 (9th Cir. 2018) (concluding that a plea agreement shows that the statutory elements constitute different elements rather than means). When Mr. Wilkins pleaded guilty, he admitted only the conduct alleged in the first paragraph of the indictment, the part charging aggravated robbery: "I . . . did then and there intentionally and knowingly, while in the course of committing theft of property and with intent to obtain and maintain control of said property, threaten and place [the victim] in fear of imminent bodily injury and death, and used and exhibited a deadly weapon, namely: a firearm." Stipulation of Facts, *State v. Wilkins*, No. 219-81050-99 (Collin Cnty., Texas Dist. Ct. Dec. 9, 1999). This admission refers only to one part of the statute on aggravated robbery.

---

[10]     The indictment also includes one paragraph on criminal attempt, alleging that Mr. Wilkins committed aggravated robbery and robbery through acts "amounting to more than mere preparation that tend[ed] but fail[ed] to effect the commission of offense intended." Tex. Penal Code § 15.01(a).

19

The indictment and stipulation arguably leave some uncertainty on divisibility. For example, the indictment includes multiple paragraphs under the heading "aggravated robbery" without explaining whether the charge relates to one crime or multiple crimes. Judges could thus differ in how they interpret their peeks at the state-court records. But the mere existence of uncertainty and reasonable disagreement does not mean that characterization as elements would have constituted an obvious mistake.

### C. Two other circuits have ruled that the statutory components of Texas robbery constitute elements, and we are reluctant to create a circuit split.

Our court hasn't addressed the divisibility of the Texas statute on robbery or aggravated robbery. But the Fifth and Ninth Circuits have addressed the divisibility of Texas robbery, and both have treated the statutory components as elements. *See United States v. Garrett*, 24 F.4th 485, 489 (5th Cir. 2022); *Martin v. Kline*, No. 19-15605, 2021 WL 6102175, at *1 (9th Cir. Dec. 22, 2021) (unpublished); *United States v. Wehmhoefer*, 835 F. App'x 208, 211–12 (9th Cir. 2020) (unpublished). Granted, these opinions aren't binding on a question of Texas law. *See United States v. Faulkner*, 950 F.3d 670, 674 n.5 (10th Cir. 2019) ("[O]ur divisibility inquiry looks to state, not federal, court decisions."). But one of the two circuits to address the issue was the Fifth Circuit. And several other circuits ordinarily defer to a federal circuit court's interpretation of state law when the circuit includes that state. *See Whitewater W. Indus.*,

*Ltd. v. Alleshouse*, 981 F.3d 1045, 1051 (Fed. Cir. 2020); *In re Dow Corning Corp.*, 778 F.3d 545, 549 (6th Cir. 2015); *Desiano v.Warner-Lambert & Co.*, 467 F.3d 85, 90 (2d Cir. 2006), *aff'd sub nom.*, *Warner-Lambert Co., LLC v. Kent*, 552 U.S. 440 (2008); *Dawn Equip. Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981, 989 n.3 (7th Cir. 1999); *Charter Oil Co. v. Am. Employers' Ins. Co.*, 69 F.3d 1160, 1164 (D.C. Cir. 1995).[11] For example, the Sixth Circuit expressly stated that it would defer to the Fifth Circuit in interpreting Texas law on divisibility. *See United States v. Cavazos*, 950 F.3d 329, 335 & n.2 (6th Cir. 2020).

Even without such deference, we are ordinarily reluctant to create a circuit split without a "sound reason." *United States v. Thomas*, 939 F.3d 1121, 1130–31 (10th Cir. 2019) (quoting *Anderson v. Private Cap. Grp.*, 549 F. App'x 715, 718 (10th Cir. 2013) (unpublished)). Because Mr. Wilkins presents no compelling basis to create a circuit split based on the pattern jury instructions, the state caselaw, the state statute, or the record documents, we lack a sound reason to reject the other circuit courts' characterization of the statutory components as elements. Under the plain-

---

[11]     The Supreme Court takes a similar approach. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 16 (2004) ("Our custom on questions of state law ordinarily is to defer to the interpretation of the Court of Appeals for the Circuit in which the State is located."), *abrogated in part on other grounds*, *Lexmark Intern., Inc. v. Static Control Components*, 572 U.S. 118, 127 (2014).

error standard, we thus conclude that the district court wouldn't have committed an obvious error by characterizing the statutory components as elements.

## III. Under the modified categorical approach, Mr. Wilkins was convicted of a crime of violence.

Because the district court would not have obviously erred by considering the statutory components as elements, we must

- apply the modified categorial approach and

- consider which crime was committed.

In pleading guilty, Mr. Wilkins stipulated to facts matching the crime of intentionally or knowingly threatening or putting another in fear of imminent bodily injury or death (using or exhibiting a deadly weapon). Tex. Penal Code § 29.02(a)(2), § 29.03(a)(2). And Mr. Wilkins does not deny that this offense would constitute a crime of violence under the sentencing guidelines.

## IV. Conclusion

If an error exists, it would not have been obvious. For an obvious error on divisibility, the defendant need not identify a precedent or state case addressing the same statute. *See United States v. Cantu*, 964 F.3d 924, 935 (10th Cir. 2020) (precedent); *United States v. Titties*, 852 F.3d 1257, 1272 n.19 (10th Cir. 2017) (state case). But merely pointing to an uncertainty wouldn't satisfy the plain-error standard. Two circuit courts

have concluded that the Texas robbery statute identifies two separate crimes, and one of those circuits sometimes obtains deference when applying Texas law. *See* pp. 19–21, above. So even if the district court had erred, the error would not have been obvious.

The district court could have reasonably viewed the statutory components as elements. The statutory components provide different mens rea requirements in separate paragraphs, the pattern jury instructions refer to the separate statutory components as different crimes, and the indictment and factual basis for the plea clarify that Mr. Wilkins was charged with a crime requiring intentional or knowing conduct. Given these circumstances, the district court would not have committed an obvious error by characterizing the statutory components as elements.

In the absence of an obvious mistake, application of the modified categorical approach would not have constituted a plain error. The stipulation of facts shows that Mr. Wilkins pleaded guilty to the set of elements requiring intentional or knowing conduct. So if the district court had erred in applying the modified categorical approach, the error would not have been plain. We thus affirm the sentence.